FILED

2006 Feb-28  PM 02:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TONY K. PRUITT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HART & COOLEY, INC.,** | ) | **Civil Action: 5:02CV2926-VEH** |
| **INCORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Tony. K. Pruitt (hereinafter "Plaintiff") brings this action pro se against his employer, Hart & Cooley, Inc. (hereinafter "Defendant"), alleging age discrimination, religious discrimination, retaliation, and negligent supervision.

Hart & Cooley, Inc., the sole remaining defendant has filed a motion for summary judgment on all of Plaintiff's claims.  (Doc. 41)  Both parties have submitted briefs and evidence in response to Defendant's motion.  For the reasons set forth in this opinion, Defendant's motion for summary judgment is due to be **GRANTED.**[1]

---

[1]  Because summary judgment is hereby granted on all of Plaintiff's claims, Defendant's pending Motion to Strike Plaintiff's Evidentiary Submission in Opposition to Defendant's Motion for Summary Judgment (doc. 48) is moot.

1

## I.    FACTUAL HISTORY

Plaintiff entered employment as a conveyor line attendant with Barber Coleman in June 1970.[2]  (Compl. ¶ 13, Pl. Dep. Vol. I, pg. 69, Rozendal Aff. ¶ 3**).** Plaintiff worked at Barber Coleman's manufacturing facility in Huntsville, Alabama, in various capacities until he became a maintenance mechanic in 1989. (Pl. Dep. Vol. I, pg. 69-70).  That same year, Defendant acquired Barber Coleman's Huntsville facility, along with several of Barber Coleman's employees, including Plaintiff.  (Pl. Dep. Vol. I pg. 71, Rozendal Aff. ¶ 3).  At the time of this action, Plaintiff remains employed by Defendant as a maintenance mechanic at its Huntsville facility.  (Pl. Dep. Vol. I, pg. 72; Rozendal Aff. ¶ 4).

## II.    PROCEDURAL HISTORY

Plaintiff filed an EEOC charge of discrimination against Defendant on December 5, 2001.  (Rozendal Aff. ¶ 10, Exh. 24).  Plaintiff listed thirty-six complaints against Defendant, twenty-one of which were based on occurrences prior to June 5, 2001.  (Rozendal Aff., Exh. 24).  In May 2002, the EEOC

---

[2]Barber Coleman was a manufacturer of air distribution products for ventilating, heating, and air conditioning systems.

2

dismissed the charge and sent Plaintiff a notice of his right to sue within 90 days.[3]

(Rozendal Aff., Exh. 26; Defendant's Evidentiary Submission in Support of its

Motion for Summary Judgment, Exh. D).

Plaintiff did not exercise his right to sue within 90 days.  Instead, he filed a

second charge of discrimination against Defendant in July 2002.  (Defendant's

Evidentiary Submission in Support of its Motion for Summary Judgment, Exh. E).

Plaintiff's second charge listed nineteen complaints against Defendant.  (Id.; Exh.

C-27).  The EEOC dismissed eleven of these complaints because they had been

alleged in Plaintiff's first charge.  (Id., Exh. C-28).  The EEOC concluded that the

eight remaining complaints did not establish a violation of law by Defendant.

(Id.).  The EEOC sent Plaintiff another notice of dismissal and right to sue on

August 30, 2002.  (Rozendal Aff., Exh. 28).  Plaintiff brought this action on

December 2, 2002.

## III.   STANDARD OF REVIEW

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings,

_____

[3]The EEOC explained that the twenty-one pre-June 5, 2001 occurrences alleged in the charge were time-barred in accordance with 29 U.S.C. § 626(d)(1).  (Def.'s Evidentiary Submission in Support of its Motion for Summary Judgment, Exh. D).  29 U.S.C. § 626 requires a claimant to file a charge of discrimination within 180 days of the alleged unlawful employment practice.  Because Plaintiff filed his charge on December 5, 2001, the EEOC considered only the events that allegedly occurred after June 5, 2001, or 180 days prior to the filing of Plaintiff's charge.  The EEOC dismissed the remaining complaints in Plaintiff's charge because it could not conclude that the complaints established a violation of law.  (Rozendal Aff., Exh. 26).

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant.  *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  If

4

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial.  *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## IV.   ANALYSIS

### A.   The court cannot consider any of the events alleged in Plaintiff's first EEOC charge because they are time-barred.

6

Plaintiff claims that Defendant has violated both the Age Discrimination in Employment Act (29 U.S.C. § 623) (hereinafter "ADEA") and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) (hereinafter "Title VII").

A substantial portion of Plaintiff's allegations were brought in his first EEOC charge.  (Doc. 1, Defendant's Evidentiary Submission in Support of its Motion for Summary Judgment, Exh. C-24).  However, because Plaintiff did not exercise his right to sue on this charge within the 90-day statutory time limit, the court may not consider any of the claims alleged in it, and may consider only the claims alleged in his second charge which are not also time-barred.[4]  See 29 U.S.C. § 626(e), *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000) ("Title VII and ADEA claims may not be brought more than 90 days after the complainant has adequate notice that the EEOC has dismissed the charge").[5]

**B.     The evidence that remains before the court does not support**

---

[4] As discussed in Part II of this opinion, eleven of the complaints alleged in Plaintiff's second charge were also brought in his first charge and are therefore time-barred.  Accordingly, only the eight remaining complaints in Plaintiff's second charge may be considered by this court.

[5] Plaintiff does not contend that the court should consider the events alleged in his first charge through an equitable tolling of the limitations period.  In some cases, 29 C.F.R. § 1601.21(b), (d) allows tolling after the claimant receives a second EEOC notice.  However, the doctrine should apply only when the EEOC has reconsidered the claimant's first charge, and the second notice is received by the claimant pursuant to such reconsideration.  See *Santini*, 232 F.3d at 825, citing *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 557 (11th Cir. 1997) and *Gonzalez v. Firestone Tire & Rubber*, 610 F.2d 241, 246 (5th Cir. 1980).  Here, Plaintiff's second EEOC notice was not received upon the EEOC's reconsideration of his first charge, but upon its dismissal of his second charge; consequently, tolling does not apply to Plaintiff's first charge.

**Plaintiff's claims of age or religious discrimination, or retaliation.**

Plaintiff's second EEOC charge contains the following complaints that remain against Defendant:

1.   Plaintiff was told by Defendant that he "could be replaced."

2.   Plaintiff was told by Defendant that he was not performing his assigned work.

3.   Plaintiff was sent home early while he still had work to complete.

4.   Plaintiff was forced to submit to a drug test "without a proper reason."

5.   Defendant has made continued attempts to provoke Plaintiff.

6.    "[O]ther acts of discrimination."[6]

### 1.   Age and Religious Discrimination

Because Plaintiff has presented the same evidence in support of his religious discrimination and age discrimination claims, and because the same analyses apply to each claim, the court will discuss both claims concurrently.[7]

───────────────

[6]Plaintiff's second charge also included two claims against the Sheet Metal Workers International Association, AFL-CIO, Local 555, of which Plaintiff is a member.  Because the Sheet Metal Workers is not a party to this action, the court will not consider these claims because they do not implicate wrongful behavior by Defendant.  Only six of Plaintiff's original EEOC complaints remain before the court.

[7]Plaintiff's Complaint does not clearly characterize his claims as either disparate treatment or hostile work environment.  However, Plaintiff has not objected to Defendant's characterization of his claims as either disparate treatment or hostile work environment claims in

### a.     Plaintiff has not presented a prima facie case of hostile work environment on the basis of either his religion or his age.

A claim of hostile work environment is established under the ADEA and Title VII upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).  To establish a prima facie case of hostile work environment on the bases of his age and his religious beliefs, Plaintiff must show: (1) he is a member of a protected class; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of himself; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and (5) a basis for holding Defendant liable for the environment. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (applying these factors in the context of a hostile environment sexual harassment claim).

Plaintiff claims that he is subjected to a pattern of discriminatory behavior

---

its Motion for Summary Judgment.  The court will thus consider Plaintiff's claims as both disparate treatment and hostile work environment claims and apply the appropriate analysis for each.

by Defendant in an effort to encourage him to resign.  (Compl. ¶ 22).  At the time of his deposition, Plaintiff was 60 years old and called himself a born-again Christian.  Both his age and his religious beliefs place him into protected classes in satisfaction of the first element of hostile work environment.  Plaintiff asserts that he has been subjected to unwelcome harassment, satisfying the second element of his claim.

To satisfy the third element, Plaintiff alleges that Defendant has made continued attempts to provoke him by interfering with his ability to perform his job and by making his work "as difficult as possible."  (Compl. ¶¶ 17, 27).  Defendant argues that Plaintiff cannot satisfy this element because he has not shown that the harassment was sufficiently severe or pervasive to alter the terms or conditions of his employment.

The Eleventh Circuit has instructed that

establishing that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment includes a subjective and an objective component.  The employee must "subjectively perceive" the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable. . . .  "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"

*Mendoza*, 195 F.3d at 1246, quoting *Harris*, 510 U.S. at 21-22, 114 S.Ct. 367 and

10

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1003, 140 L.E.2d 201 (1998).

To determine whether the harassment objectively altered Plaintiff's employment terms or conditions, the court must consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating; and (4) whether the conduct unreasonably interferes with the Plaintiff's job performance. *Mendoza*, 195 F.3d at 1246, citing *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 647 (11th Cir. 1997) and *Harris*, 510 U.S. at 23, 114 S.Ct. 367. The court must examine the alleged conduct in the context in which it occurred to determine whether, under the totality of the circumstances, the harassing conduct is sufficiently severe or pervasive to objectively alter the terms or conditions of the plaintiff's employment. *Mendoza*, 195 F.3d at 1246.

### i.     Unsafe working conditions.

Plaintiff complains of various unsafe working conditions. For example, Plaintiff must perform electrical work though he is not a trained electrician. (Pl. Dep. Vol. II, pg. 71, 72, 79). Plaintiff does not dispute that "minor electrical work" is included in his job description, or that other maintenance mechanics also

perform electrical work for Defendant.[8]  (Id., pg. 82).  Furthermore, Plaintiff

testified that he performs electrical work for his part-time job, which he works in

addition to his employment with Defendant.  (Pl. Dep. Vol. I, pg. 68).

Plaintiff also alleges that, despite his age and history of back problems, he

had "no assistance from anyone" while moving office furniture on one occasion.

(Pl. Dep. Vol. II, pg. 72-73).  Plaintiff concedes that he has no permanent lifting

restrictions from a doctor, and that he did not complain to Defendant about this job

assignment.[9]  (Pl. Dep. Vol. II, pg. 169-170).

Plaintiff also complains that he has had to enter a "number one wash" that

contains chemicals and sustains temperatures of approximately 120 degrees.  (Pl.

Dep. Vol. II, pg. 167).  Defendant argues, and the record confirms, that Plaintiff's

job description includes this type of work, and that all maintenance mechanics

must enter the wash as necessary.[10]  (Rozendal Aff. ¶¶ 20(a), (f), Exh. 1).  Plaintiff

also concedes that these jobs are performed by other employees.  (Pl. Dep. Vol. II,

---

[8] Plaintiff testified that he does not know whether the other maintenance mechanics are trained electricians.

[9] Plaintiff's job description specifically provides that maintenance mechanics "[m]ay lift weights up to 75 pounds by hand with heavier weights handled by appropriate aids."  (Rozendal Aff., Exh. 1).

[10]The job description for maintenance mechanic includes the following precaution: "Working conditions are oftentimes poor, i.e., extreme temperature variations with the possibility of dirt, grease, oil, etcetera.  Job assignments may be indoors or outdoors. . . .  Clothing spoilage is considerable. . . ."  (Rozendal Aff., Exh. 1).

pg. 82, 167, 169).

Plaintiff finally objects to repairing a propane mixer without proper training. (Pl. Dep. Vol. II, pg. 170).  Defendant responds that all of its maintenance mechanics are required to repair the mixer, and that Defendant has provided each maintenance mechanic with the same training opportunities to work on the mixer. (Rozendal Aff. ¶ 20(g)).  Plaintiff asserts that he has been required to repair the propane mixer at various times during the past six or eight years, and concedes that other employees "probably" also perform work on the mixer.  (Pl. Dep. Vol. II, pg. 170).

### ii.    "Other acts of discrimination."

Plaintiff claims that Defendant has engaged in "other acts of discrimination" against him.  (Rozendal Aff., Exh. 27).  To support this claim, Plaintiff alleges that he was harassed by managers and other employees while on his way to meetings with management.[11]  (Pl. Dep. Vol. I, pg. 161).  Plaintiff has difficulty remembering who specifically harassed him on these occasions.  (Pl. Dep. Vol. II, pg. 162).  He claims that some individuals "would try to get [him] agitated before [he] got into [the] meeting[s]."  (Pl. Dep. Vol. I, pg. 162).  When asked to describe

---

[11]While some of these incidents are time-barred, Plaintiff alleges that they also occurred on other, unspecified dates, which may not be time-barred.

13

the allegedly provocative behavior of these individuals, Plaintiff responded:

> [I]t would be hard for me to remember exactly what they said.  It would be
> something that . . . would aggravate a person.  They could holler at you, they
> could ask you a question. . . . [T]here was one that hollered at me one day
> and said "What's the matter with the back of your head?" . . . [I]n some
> cases you had one foreman that he complained about me wearing ice cream
> shirts; he complained about hair growing in my ears. . . . [T]hat's all I can
> remember.

(Pl. Dep. Vol. I, pg. 162-163).

Plaintiff asserts that this harassment is a "device" of several "cliques" that
he believes have formed among Defendant's employees.  (Pl. Dep. Vol. II, pg. 14-
15, 22, 37-38, 100, 102-103, 109, 118, 132, 171-173, 183-185, 206, 224-226).
Plaintiff testified that an international union representative who once visited the
plant told him that there are three cliques at Defendant's Huntsville plant: "a
clique for the young, a clique for the old, and a clique for Bobby Davis," one of
Plaintiff's coworkers.  (Id., pg. 37-38).  Plaintiff admits that he does not know who
belongs to these cliques, and he has no evidence that they include any members of
management.  (Id., 100, 103-104, 172-173).  He has presented no evidence that
these cliques exist other than what the union representative told him, in addition to
his own belief that "there's a clique out there."  (Id., 100, 103-104, 172-173).

Plaintiff believes that these cliques want him to be fired because he is an
obstacle to their power and greed.  (Pl. Dep. Vol. II, pg. 183-184).  He has

14

presented no evidence that he is such an obstacle, other than his stated belief that "a clique and a born-again Christian ha[ve] different religion[s]." (Pl. Dep. Vol. II, pg. 39, 117).  The record contains only one reference to Plaintiff's religion–a note that was placed on Plaintiff's toolbox, stating "Lord, help me keep my nose out of other people's business."  (Pl. Dep. Vol. II, pg. 94-95).  Plaintiff speculates that the note came from one of the cliques, as part of a pattern of discrimination which he believes is motivated by either his "religion, retaliation, age, or anything that is covered in the law . . . ."  (Pl. Dep. Vol. II, pg. 96).

After considering the alleged conduct in its totality, the court cannot conclude that Defendant's behavior satisfies the objective component of the severity and pervasiveness required of a hostile work environment claim.  The alleged harassment seems to have taken place intermittently over a period of at least fifteen years, some of which occurred before Defendant acquired the Huntsville plant.  The court cannot find any severity in Defendant's alleged conduct, because Plaintiff has presented no specific evidence that he has been treated unfairly or differently from other employees in any substantial way. Plaintiff may have felt humiliated by the harassment, but he does not allege that it was in any way physically threatening to him.  The record does not show that any of the alleged conduct has unreasonably interfered with Plaintiff's ability to

perform his job.

The court further finds that Plaintiff has failed to satisfy the fourth element of a hostile work environment claim, because he has not shown that the alleged harassment was based on a protected characteristic.  Plaintiff has not demonstrated that Defendant or any of its employees knew of his religious beliefs.  He believes that some people know he is a Christian, but he cannot remember with whom he has discussed the matter.  (Pl. Dep. Vol. II, pg. 30, 40, 116-117, 129-130).

Defendant argues that it was unaware of Plaintiff's religion until he filed his first charge of discrimination in December 2001, twelve years after Plaintiff became employed by Defendant and several years after Defendant's alleged conduct began.  (Rozendal Aff. ¶¶ 2, 8).  Plaintiff's only evidence that his religion is known to anyone at work is his own statement that his beliefs are "obvious," yet he does not explain why he thinks his religion is obvious to anyone.  (Pl. Dep. Vol. II, pg. 129-130).  He does not know his coworkers' religious beliefs, and he cannot say with certainty that he is the only Christian employed by Defendant. (Id., pg. 116-117, 120).  Plaintiff has not shown that other Christians are targets of discrimination or harassment at work, and he admits that he does not know "how other people are treated."  (Id., pg. 40).

Similarly, Plaintiff has failed to show that the alleged harassment was

16

motivated by his age.  The record shows that Defendant employs five maintenance

mechanics, one of whom is the same age as Plaintiff, and two others who are only

two to six years younger than Plaintiff.  (Rozendal Aff. ¶ 5).  Plaintiff has not

alleged that these other maintenance mechanics are suffering similar ill-treatment

because of their age or for any other reason.  He cannot remember anyone at work

making disparaging comments about his age or about older workers in general.

(Pl. Dep. Vol. II, pg. 133, 206-207).  He remembers no written notes, comments,

or letters to him that disparage older workers, or otherwise criticize anyone

because of their age.  (Id.).  Plaintiff has offered no evidence that specifically

supports his claim of harassment due to his age.  At deposition, he refers to his age

as only a possible explanation of Defendant's behavior toward him.[12]  (Id., pg. 22,

32, 96, 132).

Because Plaintiff has not presented a prima facie case of hostile work

environment on the basis of either his religion or his age, Defendant is entitled to

summary judgment as to this claim.

### b.    Plaintiff has not presented a prima facie case of disparate

---

[12]For example, when asked whether Plaintiff believed that specific behavior was
motivated by a particular type of discrimination, Plaintiff responded that "[i]t could be religion, it
could be age, it could be retaliation for filing a grievance; it could be Union activity; it could be
any of the discriminations listed in the [Sheet Metal Workers'] contract [with Defendant]."  (Pl.
Dep. Vol. II, pg. 22-23).  See also Id., pg. 32, 36-37, 96, 117, 131-132, 206-207.

17

**treatment on the basis of either his religion or his age.**

Plaintiff may prove disparate treatment by presenting either direct or circumstantial evidence of discrimination.  See *Hawkins v. Ceco Corp.*, 883 F.2d 977, 982 (11th Cir. 1989).  Direct evidence is "evidence which, if believed, would prove the existence of a fact in issue without inference or presumption." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990), citing *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989).

The record contains no direct evidence of discrimination by Defendant. Plaintiff must therefore rely on circumstantial evidence to prove his claim.  See *Hawkins*, 883 F.2d at 982.  To establish a prima facie case of discrimination with circumstantial evidence, Plaintiff must satisfy the inferential test established by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  He must show that: (1) he is a member of a protected class; (2) he was qualified to receive a job benefit or position; (3) he was subjected to an adverse employment action; and (4) someone younger or of a different religion received the position or other job benefit for which he was denied.  See *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (age discrimination); *Lubetsky v. Applied Card Systems, Inc.*, 296 F.3d 1301, 1305 (11th Cir. 2002) (religious discrimination).

18

Defendant does not dispute that Plaintiff belongs to a protected class on the bases of both his age and his religious beliefs, nor does Defendant question whether Plaintiff is qualified to receive a job benefit or position.  Defendant argues that Plaintiff has not presented a prima facie case because he has not been subjected to an adverse employment action.[13]  To satisfy this element of his claim, Plaintiff asserts that Defendant has "manipulat[ed] him into taking forced drug tests . . . without any proper reason," that he has been sent home early before the scheduled end of his shift, and that he was denied vacation time despite his record of perfect attendance.  (Compl. ¶ 20, Rozendal Aff., Exh. 27).

### i.   Discriminatory drug test

Plaintiff claims that on April 19, 2002, a piece of conduit pipe fell from a storage rack that he was attempting to move.  (Pl. Dep. Vol. II, pg. 86).  Plaintiff was told by his foreman to take a drug-screening test.  (Id.).  Defendant claims it wanted the test because it believed Plaintiff had caused a "work-related accident" that placed Plaintiff and other employees in danger of injury.[14]  (Rozendal Aff. ¶

---

[13]The record shows that Plaintiff has been the subject of several written and verbal disciplinary actions.  (Rozendal Aff., Exh. 15).  However, many of these were withdrawn from Plaintiff's personnel record at his request.  (Id.).  Plaintiff alleges no other adverse employment actions resulting from these reprimands.

[14]The union contract requires that an employee submit to a drug test in the event he is: (a) involved in a work-related accident; (b) injured at work; or (c) observed in a condition, or demonstrating conduct, which suggests that the employee is working under the influence of

17(d)).  Plaintiff disputes that an accident occurred, and he believes that Defendant

required him to take the drug test in violation of the union contract and in an effort

to discriminate against him.  (Pl. Dep. Vol. II, pg. 86).  Defendant asserts that it

was within its contractual rights to require the test, and that the test was not

motivated by any discriminatory motive.  (Rozendal Aff. ¶ 17(d)).

Plaintiff testified that he has submitted to only one other drug test during the

past two years.[15]  (Pl. Dep. Vol. II, pg. 87).  He believes other employees have

taken drug tests as well, but he does not know under what circumstances.  (Id., pg.

85-86).  Aside from the drug test, Plaintiff does not allege that he suffered an

adverse employment action resulting from the conduit pipe incident.

### ii.    Denial of requested vacation time

Plaintiff claims that he has been denied requested vacation time, despite his

record of perfect attendance.  (Pl. Dep. Vol. II, pg. 18).  On one occasion, a

handwritten note from Plaintiff's direct supervisor indicated that Defendant could

not grant him the requested time because another employee, who had asked for the

same vacation time two months earlier, was already scheduled to be away from

---

alcohol and/or an illicit substance.  (Rozendal Aff., Exh. 2, pg. 50).

[15]Plaintiff concedes that this second drug test also occurred after a work-related accident,
in which Plaintiff cut his finger and required two stitches.  (Pl. Dep. Vol. II, pg. 87).

20

work during the time in question.  (Id.).  The note suggests that Plaintiff have

vacation time the following week.  (Id.).  Plaintiff does not dispute this note, and

the record contains no other reference to a denial of requested vacation time.

### iii.    Being sent home early

The record refers to only one incident during which Plaintiff was required to

leave prior to the scheduled end of his scheduled overtime.[16]  (Rozendal Aff., Exh.

20).  In June 2002, Plaintiff was told to leave work two hours early.  (Id.).  He

filed an internal grievance with Defendant, in which he requested compensation

for the two hours he did not work and for "mental anguish due to continue[d]

discrimination."  (Id.).  Defendant responded that it had acted within its

contractual right to cancel overtime at its discretion, and that all employees on that

shift were sent home at the same time.  (Id.).  Plaintiff has not disputed this

account, nor has he asserted that he was the only employee to be sent home early

on that particular day.

The record does not demonstrate that Plaintiff has suffered an adverse

employment action.  The Eleventh Circuit requires that "some threshold level of

substantiality . . . be met for unlawful discrimination to be cognizable."  *Wideman*

---

[16] Plaintiff was sent home early on one other occasion prior to the incident discussed in
this opinion.  (Rozendal Aff., Exh. 9).  This incident occurred in September 2001 and is time-
barred.

*v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998).  "An employee

must show a *serious and material* change in the terms, conditions, or privileges of

employment" to establish that an adverse employment action has occurred.  *Davis*

*v. Town of Lake Park, Florida*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in

original).  The Eleventh Circuit has further characterized an "adverse employment

action" as

> an ultimate employment decision, such as discharge or failure to hire, or
> other conduct that alters the employee's compensation, terms, conditions, or
> privileges of employment, deprives him or her of employment opportunities,
> or adversely affects his or her status as an employee.

*Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

Plaintiff continues to be employed by Defendant.  He is paid an additional

40 cents per hour for working the evening shift.  (Rozendal Aff. ¶ 4).  The record

contains no evidence that Plaintiff's employment terms or conditions have altered

in any way, or that he has been deprived of employment opportunities.

Even if Plaintiff had established that he has suffered an adverse employment

action, his disparate treatment claim must still fail because he has not shown that

an employee who is younger than himself or of a different religion received a

position or job benefit for which Plaintiff was qualified and denied.

Plaintiff does complain that he was wrongfully transferred to work the

22

evening shift while other, less senior, employees remained on the day shift.[17]  (Pl. Dep. Vol. II, pg. 121).  He asked to transfer back to the day shift only once, three years before his deposition, but the job was awarded to another employee.  (Pl. Dep. Vol. II, pg. 122).  Plaintiff does not know who got the position or how old the employee was.  (Id.).

Despite this complaint, Plaintiff has since testified that he does not know whether he would work the day shift now if he was given the opportunity.  (Pl. Dep. Vol. II, pg. 227).  Defendant claims that in September 2003 it posted a vacancy notice for a maintenance mechanic on the day shift and Plaintiff did not apply for it.  (Rozendal Aff. ¶ 7).  Because Plaintiff has greater seniority than the other maintenance mechanics who applied for the vacancy, Defendant claims that Plaintiff would have been awarded the transfer had he applied.  (Id.).  Plaintiff does not dispute any of these facts, but continues to claim that his transfer to the evening shift was evidence of discrimination.  (Pl. Dep. Vol. II, pg. 123).

The court finds that Plaintiff has not satisfied elements three or four of a disparate treatment claim.  Because Plaintiff has not presented a prima facie case of disparate treatment on the basis of either his religion or his age, Defendant is

_____

[17]  This transfer occurred nine years before his deposition, and he continues to work the evening shift at the time of this action.  (Pl. Dep. Vol. II, pg. 123).

entitled to summary judgment as to this claim.

### 2.    Retaliation

Plaintiff claims that Defendant has retaliated against him for filing charges of discrimination against it.  (Compl. ¶ 31).  The Eleventh Circuit has recognized that retaliation is a separate violation of Title VII.  See *Gupta*, 212 F.3d at 586. "To recover for retaliation, the plaintiff need not prove the underlying claim of discrimination which led to [his] protest, so long as [he] had a reasonable good faith belief that the discrimination existed."  *Id.*, quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) and *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989).

To establish a prima facie case of retaliation under Title VII, Plaintiff must show that: (1) he participated in a Title VII-protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  See *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir. 1999).

Defendant argues that Plaintiff's claim must fail because he has not shown that he has suffered an adverse employment action.

### a.    Plaintiff was told he "could be replaced."

Plaintiff claims that a member of management once told him he "could be

24

replaced" during a grievance meeting.  (Rozendal Aff., Exh. 27).  In his EEOC charge, Plaintiff specifically classified this comment as "Retaliation."  (Id.). However, Plaintiff cannot remember this comment being made to him on any other occasion.  (Pl. Dep. Vol. II, pg. 154).  Plaintiff does not allege that he suffered a reduction in pay or in the number of hours he worked, or that he was constructively discharged or terminated in connection with this incident.

> **b.    Plaintiff was accused of not performing his assigned work.**

Plaintiff also complains that a plant manager once told him that he was not performing his assigned work.  (Pl. Dep. Vol. 155).  Plaintiff again makes no claim that he suffered an adverse employment action beyond this alleged reprimand.

While Plaintiff's Complaint alleges that both of these comments were made in retaliation for his EEOC charges, he has since testified that these comments were actually made in retaliation for his filing internal grievances with Defendant and for his union activities.  (Pl. Dep. Vol. II, pg. 153-54, 157).  Other than the Complaint, the record contains no allegation and no evidence that the comments were connected to Plaintiff's EEOC charges.

Because Plaintiff has not established that he suffered an adverse

employment action in retaliation for filing his EEOC charges, or that there is any causal connection between the alleged retaliation and the protected activity, Defendant is entitled to summary judgment as to this claim.

### C.   The record does not contain sufficient evidence to support Plaintiff's claim of negligent supervision.

Plaintiff finally argues that Defendant should be liable for negligent supervision because Defendant "fail[ed] to provide adequate supervision and security to protect [him] from the acts complained of."  (Compl. ¶¶ 16, 42).

The Alabama Supreme Court recognizes the tort of negligent supervision in an employment relationship.   See *Sloss-Sheffield Steel & Iron Co. v. Bibb*, 51 So. 345 (Ala. 1910); *Thompson v. Havard*, 235 So.2d 853 (1970).  In *Thompson*, the court explained that

> [i]n the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him.  **Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge.**  It is incumbent on the party charging negligence to show it by proper evidence.  This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such a nature, character, and frequency that the master, in the exercise of due care, must have had them brought to his notice.

*Thompson*, 235 So.2d at 858 (emphasis added).

26

In support of this claim, Plaintiff testified that Defendant has unfairly reprimanded him after giving him conflicting work assignments through multiple supervisors.  (Rozendal Aff., Exh. 8).  On one occasion, Defendant warned Plaintiff for attempting to carry out conflicting work assignments.  (Id.).  When Plaintiff objected to the reprimand, Defendant removed the warning from his personnel file and agreed that he would not be held accountable in the future should he receive conflicting work assignments again.  (Rozendal Aff. ¶ 17(b)).  Plaintiff does not dispute this account by Defendant.

Defendant claims that all of its maintenance mechanics receive direction from multiple supervisors.  (Rozendal Aff. ¶ 17(b)).  However, Plaintiff maintains that he should receive work assignments from only his direct supervisor.  (Pl. Dep. Vol. I, pg. 81).  Defendant argues that the union contract does not specifically compel each employee to report to only one supervisor, and that Plaintiff is the only employee to request direction from a single supervisor.  (Rozendal Aff. ¶ 17(b)).

Plaintiff has not alleged, and the record contains no evidence, that any of Defendant's employees is incompetent.  He has not pointed to a particular supervisor who has "regularly harassed" or treated him unfairly.  (Doct. 45).  Furthermore, he has not shown that Defendant knew of any incompetence within

its workforce, or that Defendant would have learned of it had it exercised due and proper diligence.  While Plaintiff does allege specific confrontations with members of management and his coworkers, Plaintiff concedes that he either did not complain or does not remember if he complained to Defendant about several of these confrontations.[18]  (Pl. Dep. Vol. 89, 99, 100, 107-108, 112, 115, 122, 123, 169).

Because Plaintiff has not shown that any of Defendant's employees is incompetent, or that Defendant knew or reasonably should have known of such incompetence, he has not established that Defendant should be liable for negligent supervision.  Defendant is therefore entitled to summary judgment as to this claim.

V.    CONCLUSION

After reviewing the evidence in its entirety, the court finds no genuine issue of material fact sufficient for any of Plaintiff's claims to survive summary judgment.  Plaintiff has failed to present a prima facie case of hostile work environment and disparate treatment on the bases of either his age or his religious

---

[18] Plaintiff testified that he complains only about the problems he believes are "clique related."  (Pl. Dep. Vol. II, pg. 89, 99, 100, 107-108, 115, 122, 123, 169).  However, he also testified that he believes all the "unfair treatment" he has received from Defendant is "related to the cliques."  (Id., pg. 103).  As previously discussed, Plaintiff does not know which employees are members of these cliques.  He therefore could not complain to Defendant that any specific member of a clique is incompetent.  (Pl. Dep. Vol. II., pg. 37-38, 103-104).

beliefs.  Plaintiff has also failed to show that Defendant retaliated against him for filing his EEOC charges of discrimination.  Finally, Plaintiff has not demonstrated that Defendant knew or reasonably should have known that any of its employees were incompetent.

Based on the foregoing, the court finds that Defendant Hart & Cooley, Inc.'s motion for summary judgment is due to be **GRANTED**.  A separate Order will be entered.

**DONE** and **ORDERED** this 28th day of February, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge